IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

**LIBERTY MUTUAL INS. CO.,**

    **Plaintiff,**

vs.                                              CASE NO. 5:10-cv-334/RS-GRJ

**ROYAL AMERICAN MGMT.
INC., et al.,**

    **Defendants.**
_____/

## JUDGMENT

Plaintiff brought a one count claim against Defendants for breach of insurance contract. Defendants contend that they are relieved from any contractual duty because of Plaintiff's own breach of the contract and/or an implied covenant of good faith. A bench trial was held November 3, 2011. The parties filed post-trial briefs. (*See* Docs. 55 & 57). Plaintiff moved to strike a portion of Defendants' brief because it raised a new theory of damages that Defendants' damages should be limited to the amount of the remaining deductible. (*See* Doc. 58). I allowed the parties to conduct additional discovery on this issue and ordered them to supplement the record. (Doc. 60). The parties have done so. (*See* Docs. 67 & 68).

### A. Finding of Facts

The facts of the case are largely undisputed. Plaintiff and Defendants are parties to a workers' compensation and employers' liability policy ("the policy") with a policy term of the year 2001. (D.E. 2). The policy contained a high-deductible (Tr. at 241). In

October 2001, Defendants' employee, Ricky Thomas, hurt his back in the course of his employment (Tr. at 95).  Mr. Thomas was compensated pursuant to the policy's coverage.  He was medically treated and underwent a laminectomy in January 2002.  (Tr. at 98).  By April 2002, Mr. Thomas returned to light duty work.  (Tr. at 98).  By May 2002, he had reached maximum medical improvement with a 7% impairment rating and was able to work full duty.  (Tr. at 99).  In July 2002, Mr. Thomas' claim was closed. (Tr. at 100).  The parties do not dispute the propriety of this initial claim.

After the claim was closed, Mr. Thomas continued to receive medical treatment in the form of pain management.  (Tr. at 100).  Mr. Thomas was treated initially by Dr. Derbes, but then sought continued treatment with Dr. Aaron Shores.  (Tr. at 100).  The bills for pain management were processed by Plaintiff and paid by Defendants.  (Tr. at 35).  In December 2003, Mr. Thomas' claim was reopened because of the continuing pain management treatments.  (Tr. at 100).  The treatments continued throughout this period, 2003 to 2006.

In April 2006, Mr. Thomas suffered an injury that occurred at home.  (Tr. at 105). Mr. Thomas' leg gave out which caused him to fall and injure his left shoulder.  (Tr. at 105).  An independent medical examination ("IME") was not performed at this time. (Tr. at 106).  In addition, no 120-day letter was sent.  (Tr. at 106).  However, Plaintiff continued to pay for Mr. Thomas' medical expenses and Defendants continued to pay the associated deductible.  (Tr. at 106).  These payments included bills for Mr. Thomas' shoulder.

In February 2007, Mr. Thomas' treating physician, Dr. Shores, informed Plaintiff that the Mr. Thomas' shoulder injury was unrelated to his initial injury. (Tr. at 108). In April 2007, Defendants sent Plaintiffs a letter to "confirm" that they were not paying for Mr. Thomas' shoulder injury. (Tr. at 108-109). In December 2007, Mr. Thomas filed a formal petition for benefits wherein he requested treatment for this shoulder. (Tr. at 114). In February 2008, Mr. Thomas and Plaintiff mediated the claim. (Tr. at 134). At mediation, it became clear that the defense that the shoulder injury and the initial back injury were unrelated had been waived because of the past two years of shoulder-related payments by Plaintiff. (Tr. at 136). The mediation resulted in a settlement that provided that the "[employer/carrier] will authorize an evaluation with an orthopedic physician. If the orthopedic physician opines that the claimant's left shoulder requires treatment which is medically necessary and related to the [initial claim], then the [employer/carrier] will authorize the same." (P.E. 10). Plaintiff and Mr. Thomas agreed that Dr. Steven Goodwiller would perform the IME. (P.E. 10).

In May 2008, Dr. Goodwiller performed the IME. (P.E. 6). Dr. Goodwiller established a causal link between Mr. Thomas' shoulder injury and the original injury. (Tr. 176-77); (P.E. 6 at 6).

Plaintiff settled Mr. Thomas' claim for the stipulated amount of $195,243.90. Defendants objected to this settlement. Plaintiffs seek reimbursement of this amount. (Doc. 39, p.5).

B. Conclusions of Law

Each side of this case claims that the other breached the insurance contract. To establish a breach of contract, the proponent must establish the existence of a contract, its breach, and damages resulting from the breach. *Rollins, Inc. v. Butland*, 951 So. 2d 860, 876 (Fla. 2d DCA, 2006) (citation omitted).

The parties have stipulated that their insurance policy is a valid contract. (Doc. 39, p.4). The policy has a $300,000 deductible per occurrence for bodily injury by accident. (D.E. 2); (Tr. at 257). Plaintiff claims that the policy "is not insuring the insured for anything but tort immunity from suits by the insured's injured workers (Section 440.11, Florida Statutes); thus, the carrier can only breach the policy if it fails to pay a claim and thereby exposes its insured to tort liability." (Doc. 57, p.3). In sum, Plaintiff argues that under Florida law Defendants cannot complain about Plaintiff's claim handling.

There is no doubt that Florida's worker's compensation law immunizes employers from tort actions. "Worker's compensation is a quid pro quo statute; the employee foregoes the right to sue in exchange for the employer's assumption of liability without fault." *Fitzgerald v. S. Broward Hosp. Dist.*, 840 So. 2d 460, 462 (Fla. 4th DCA, 2003) (citation omitted). What is unanswered from statute is whether an insurance carrier's policy acts only to insure against tort liability. To answer that question, the words of the policy govern. Insurance contracts are construed according to their plain meaning. *U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So. 2d 871, 877 (Fla. 2007).

The policy states the following:

"C. We will Defend

We have the right and duty to defend at our expense any claim, proceeding or suit against you for benefits payable by this insurance. We have the right to investigate and settle these claims, proceedings or suits." (Policy at 2) (Doc. 1, Attach. 1)

This provision clearly indicates that there is both a "duty to defend . . . any claim" and a "right to . . . settle these claims." These provisions must be read together. The duty to defend would be rendered meaningless if Plaintiff could exercise the right to settle without any regard for the rest of the provision. *See Liberty Mut. Ins. Co. v. Precisionaire, Inc.*, 2006 U.S. Dist. LEXIS 99846. *26 (M.D. Fla. 2006). Here, "the provisions of the insurance policy . . . indicate that Plaintiff was vested with broad contractual discretion to defend, investigate and settle claims. However, Plaintiff was required to observe reasonable limits in exercising that discretion, consistent with the parties' purpose in contracting." *Id*. I agree with this reasoning in *Precisionaire* and find that the discretion allowed to Plaintiff is met where there is "some basis in fact and/or law" for the decision. *Id*.

It is undisputed that the IME performed by Dr. Goodwiller in May 2008 was dispositive on the issue of the causal relationship between Mr. Thomas' two accidents. "Each party is bound by . . . the opinions of the [the] independent medical examiner." FLA. STAT. §440.13 (5). Rather, Defendants contend that the IME should have been performed immediately after treatment began on Mr. Thomas' shoulder in 2006. (Doc. 55, p.14). Defendants claim that the IME was merely "academic" at the time that it was

conducted because Plaintiff had waived the issue of causation by paying for Mr. Thomas' shoulder injury for several years. *Id*. at 20-21.

The problem with Defendants' contention is that even if the IME was performed in 2006, there is no indication that the results would have been different. Defendants suggest that Dr. Goodwiller was self-interested in finding a causal relationship between Mr. Thomas' two injuries because Dr. Goodwiller was the treating physician and would receive financial benefit from the services he performed. *Id*. These charges are nothing more than speculation and do not undermine the IME.

The same problem exists for Defendants' waiver argument and the other "red flags" that Defendants claim should have alerted Plaintiff to investigate and deny Mr. Thomas' second claim. They are immaterial because they do not affect Dr. Goodwiller's conclusions which are dispositive on the issue of the relatedness of the injuries. That is, presuming that no payments were ever made for Mr. Thomas' shoulder, and that Plaintiff conducted an investigation early on, the IME would still have established the causal relationship. Thus, presuming Defendants can show that these actions constituted a breach of the policy, Defendants cannot show resulting damages.

Turning to the deducible limitation argument, the parties agree that Plaintiff has paid $323,005.24 on this claim. (Doc. 67, p.2, Doc. 68, p.2). While this figure exceeds the $300,000 deductible, Plaintiff has persuasively demonstrated that the policy requires Defendants to pay for "allocated loss adjustment expense[s]" which may "exceed the applicable deducible limit." (Doc. 68, p. 3), (D.E 2). The "ALAE" includes the costs associated with handling claims such as attorney fees and litigation costs. *Id*. The parties

agree that the sum of the indemnity and medical payments is $290,625.85.  (Doc. 67, p.2, Doc. 68, p.4).  The additional $32,379.39 represents ALAE payments, and Defendants' claim that a portion of this is arbitrary is unpersuasive.  (Doc. 68, Exhibit 3).

After additional discovery, it is clear that Defendants have paid $127,761.34 towards the deductible. (Doc. 67, p.2).  Subtracting this figure from what Plaintiff has already paid, $323,005.24, results in what Defendants' now owe -- $195,243.90.  This is also the stipulated damages amount.

**IT IS ORDERED**:

1. **Judgment in entered in favor of Plaintiff LIBERTY MUTUAL INSURANCE COMPANY and against Defendants ROYAL AMERICAN MANAGEMENT, INC.; PEOPLE'S FIRST PROPERTIES, INC.; ROYAL AMERICAN CONSTRUCTION COMPANY, INC.; ROYAL AMERICAN CONSTRUCTION COMPANY OF N.C., INC.; ROYAL AMERICAN DEVELOPMENT, INC.; ROYAL AMERICAN HOSPITALITY, INC.; RAFS OF PANAMA CITY, INC.; ROYAL AMERICAN FOOD SERVICES INC.; BEACH LIQUORS OF PANAMA CITY, INC.; FIRST SERVICE CORP. OF PANAMA CITY, INC.; and FIRST LINKS, INC. in the amount of $195,243.90.**

2. The clerk is directed to close this case.

**ORDERED** on February 14, 2012.

/S/ Richard Smoak
**RICHARD SMOAK
UNITED STATES DISTRICT JUDGE**